[No. 30887-8-II.   Division Two.   March 22, 2005.]

SATSOP VALLEY HOMEOWNERS ASSOCIATION, INC., *Respondent*, v. NORTHWEST ROCK, INC., ET AL., *Appellants*.

*H. Steward Menefee, Prosecuting Attorney for Grays Harbor County*, and *James G. Baker, Deputy*, and *Wayne D. Hagen, Jr.* (of *Edwards & Hagen*), for appellants.

*Eric D. "Knoll" Lowney* and *Paul A. Kampmeier*, for respondent.

¶1 HOUGHTON, J. — Grays Harbor County (County) and Northwest Rock, Inc., appeal a trial court ruling in favor of Satsop Valley Homeowners Association. Finding, inter alia, that collateral estoppel applied, the trial court reversed a decision of the County Board of Adjustment (Board) allowing Northwest Rock to expand its 7-acre gravel pit into a 30.5-acre surface excavation mine. Satsop Valley cross-appeals, arguing trial court legal error. Because collateral estoppel applies here, we affirm the court on that ground.[1]

## FACTS

¶2 In 1962, John Mouncer purchased 140 acres of land in the County. In 1981, he established a five-acre gravel mine, known as the Mouncer Pit. He used the mine on an as-needed basis to create pit run gravel for road base.

¶3 In May 1981, through an ordinance, the County zoned the Mouncer property, including the Mouncer Pit, as Agriculture Use District 2 (A-2). Within the A-2 zone, gravel mining constituted a nonconforming use. To continue his mining operations at the Mouncer Pit, the County required that Mouncer obtain a conditional use permit (CUP). Grays Harbor County Code (GHCC) 17.16.060.

¶4 On May 11, 1981, the Board granted Mouncer a CUP to extract gravel on five acres of his property. On October 2, 1991, the Board granted another CUP to expand the mining operations onto an additional two acres.

¶5 In 1994, Mouncer sold 14.5 acres of his property, including the Mouncer Pit, to Friend & Rikalo. In 1997, Friend & Rikalo changed its name to Northwest Rock.

¶6 On August 27, 1999, Northwest Rock applied for a new CUP to expand its existing gravel pit onto the additional acreage. After public notice and a hearing, the Board

---

[1] Because we affirm the trial court's decision that collateral estoppel bars Northwest Rock and the County's arguments, we do not address the cross-appeal, which Satsop Valley refers to as a "protective appeal." Clerk's Papers at 266. For the same reason, we do not address whether substantial evidence supports the Board's finding that, before the zoning ordinance was adopted, John Mouncer intended to mine 30.5 or 140 acres of his property.

approved a CUP with certain conditions. But when Satsop Valley appealed the Board's decision, the superior court reversed, ruling that expanding the pit was an improper change in use and an unauthorized expansion of a nonconforming use. *Satsop Valley Homeowners Ass'n v. Northwest Rock, Inc.*, No. 99-2-02404-1 (Thurston County Super. Ct. Aug 19, 2003) (referred to herein as SVHA I). Administrative Record (AR) at 896, 932-40.

¶7 On June 12, 2002, Northwest Rock wrote a letter to the County Planning Department, requesting an amendment to its existing excavation permit to allow surface excavation on either 30.5 acres or the entire 140-acre parcel.[2] On June 26, 2002, acting under County ordinance 241, section 13.08.180,[3] the County issued an administrative decision amending Northwest Rock's permit to allow surface mining on up to 30.5 acres of land.[4]

¶8 Satsop Valley submitted written objections to the Board regarding the County's administrative decision. It contended that the proposed use expansion from 7 acres to 30.5 acres created a substantial and material change in the project scope and exceeded the County Administrator's authority under GHCC 17.60.160.

¶9 The Board disagreed and affirmed the County's administrative decision. Citing *City of University Place v. McGuire*, 144 Wn.2d 640, 30 P.3d 453 (2001), the Board explained that, rather than the conditionally permitted 7-acre pit, the entire 140-acre tract, as the diminishing asset, was the project area for the nonconforming surface

[2] The record indicates that Northwest Rock purchased only 14.5 acres of land from Mouncer. It is unclear on what grounds Northwest Rock applied to expand its pit to 30.5 acres or to the entire 140 acres. But this issue is not before us on appeal.

[3] This ordinance was later codified under GHCC 17.60.160: "The Administrator is authorized to approve variations from or amendments to the approved plans which do not result in a change that would substantially affect surrounding properties, the natural environment, or materially change the scope of the project." AR at 155.

[4] Relying on GHCC 17.60.160, the County issued its decision without public notice and a hearing. The County gave notice and held a public hearing only after Satsop Valley appealed the County's administrative decision allowing mine expansion to 30.5 acres.

excavation. Therefore, a 30.5-acre section did not constitute a substantial or material change in the scope of the approved expansion permit.

¶10 In response, Satsop Valley filed a land use petition in the superior court, seeking review of the Board's administrative decision. The superior court reversed the Board's decision, ruling that:

(1) The County, Mouncer, and Northwest Rock were collaterally estopped from asserting expansion under the diminishing asset rule first announced in *McGuire*, 144 Wn.2d at 651;

(2) The County Planning and Building Director did not comply with the law when he amended the CUP under GHCC 17.60.160 and that the error was not harmless;

(3) Substantial evidence did not support the Board's decision that Mouncer intended to mine more than five or seven acres;

(4) The Board erred in determining that SVHA I was not relevant to or binding on the parties.

¶11 The County and Northwest Rock sought reconsideration, arguing that the diminishing asset doctrine newly announced in *McGuire* precluded collateral estoppel. In its order denying reconsideration, the court noted that it had previously taken the *McGuire* opinion into consideration. The County and Northwest Rock appeal.

## ANALYSIS

### Standard of Review

■ ¶12 The Land Use Petition Act, chapter 36.70C RCW, governs judicial review of land use decisions. *HJS Dev., Inc. v. Pierce County ex rel. Dep't of Planning & Land Servs.*, 148 Wn.2d 451, 467, 61 P.3d 1141 (2003). "A petition for review by the superior court constitutes appellate review on the administrative record before the local jurisdiction's body or officer with the highest level of authority to make the final determination." *HJS*, 148 Wn.2d at 467; RCW 36.70C.130(1), .020(1).

¶13  Under RCW 36.70C.130(1), when reviewing an administrative decision, a superior court "may grant relief only if the party seeking relief has carried the burden of establishing that one of the standards set forth in (a) through (f) of this subsection has been met." These standards comprise:

(a) The body or officer that made the land use decision engaged in unlawful procedure or failed to follow a prescribed process, unless the error was harmless;

(b) The land use decision is an erroneous interpretation of the law, after allowing for such deference as is due the construction of a law by a local jurisdiction with expertise;

(c) The land use decision is not supported by evidence that is substantial when viewed in light of the whole record before the court;

(d) The land use decision is a clearly erroneous application of the law to the facts;

(e) The land use decision is outside the authority or jurisdiction of the body or officer making the decision; or

(f) The land use decision violates the constitutional rights of the party seeking relief.

RCW 36.70C.130. Also, "[i]n order to grant relief under this chapter, it is not necessary for the court to find that the local jurisdiction engaged in arbitrary and capricious conduct." RCW 36.70C.130(2).

¶14  On review of a superior court's land use decision, we stand in the same shoes as the trial court. *HJS*, 148 Wn.2d at 468. We review the administrative decision on the record before the administrative tribunal, not the superior court record, and we review the record and the questions of law de novo to determine whether the facts and law supported the land use decision. *HJS*, 148 Wn.2d at 468.

## Collateral Estoppel

¶15 Northwest Rock and the County contend that the trial court erred in applying collateral estoppel, based on SVHA I, to preclude expansion. They assert that collateral

estoppel does not apply because a later change in the law affects their rights.

■■ ¶16 We review the application of collateral estoppel de novo as a question of law. *Christensen v. Grant County Hosp. Dist. No. 1*, 114 Wn. App. 579, 584, 60 P.3d 99 (2002). Collateral estoppel prevents endless relitigation of already decided issues. *Reninger v. Dep't of Corr.*, 134 Wn.2d 437, 449, 951 P.2d 782 (1998). Collateral estoppel applies where identical parties litigated identical issues to a final judgment on the merits and where no injustice results from applying the bar. *Reninger*, 134 Wn.2d at 449.

¶17 No one disputes that identical parties litigated to a final judgment on the merits in SVHA I. Thus, we must decide whether the issues were identical and whether an injustice would result in applying the doctrine.

### Identical Issues

¶18 In SVHA I, the parties disputed, inter alia, whether the size of Mouncer Pit could be expanded as a legal nonconforming use. In SVHA I, the trial court ruled that "[i]t was an error of law for the Board to conclude . . . that the use could be expanded to 30 acres. . . . [T]he only evidence that supports any finding is that the nonconforming use [area] . . . is 7 acres." AR at 935. Based on the common law rule that the nonconforming uses cannot be expanded beyond the present use at the time the nonconformity begins to exist, the trial court reversed the Board and disallowed the mine expansion. Northwest Rock and the County did not appeal SVHA I.

¶19 In this appeal, Northwest Rock and the County appeal the trial court's ruling disallowing the expansion of the gravel mine to 30.5 acres. Thus, the issues in both cases are identical.[5]

---

[5] Northwest Rock and the County argue that, in SVHA I, Northwest Rock wanted not only to expand its mine, but also to conduct rock crushing and processing on site. The County asserts that this is substantial and material difference that makes it unreasonable to compare Northwest Rock's *current*

Injustice

¶20 Northwest Rock and the County contend that they did not have a full and fair opportunity to litigate their claim because the later *McGuire* decision changed the law.[6] Therefore, they assert that applying the bar works an injustice on them.

¶21 In determining whether applying the collateral estoppel bar works an injustice, Washington courts look to whether the parties to the earlier proceeding received a full and fair hearing on the issue in question. *Thompson v. Dep't of Licensing*, 138 Wn.2d 783, 795-96, 982 P.2d 601 (1999). And an administrative decision may have preclusive effect on a later civil action where the parties had ample incentive to litigate issues. *Thompson*, 138 Wn.2d at 796; *Reninger*, 134 Wn.2d 437.

¶22 In *Thompson*, our Supreme Court noted:

> [T]he injustice prong of the collateral estoppel doctrine calls for an examination primarily of procedural regularity. This is not to rule out substantive analysis entirely, as when, for instance, there is an intervening change in the law, or the law applicable at the time of the first hearing was not well-explained and required subsequent exposition. But where, as here, a party to the prior litigation had a full and fair hearing of the issues, and did not attempt to overturn an adverse outcome, collateral estoppel may apply, notwithstanding an erroneous result.

138 Wn.2d at 799-800.

¶23 Northwest Rock and the County fully litigated this issue in SVHA I. They did not seek review. Where parties fail to appeal, "a subsequent change in law can have

application with the 1999 application. We disagree. Rock processing is not an issue in the present case and is not relevant to the issues of (1) whether the *size* of the nonconforming use at the Mouncer Pit could be expanded or (2) whether Mouncer intended to mine his entire property before the zoning ordinance was enacted. Thus, the relevant facts have not changed as to our collateral estoppel discussion that rock processing is not part of the second appeal.

[6] *McGuire*, 144 Wn.2d at 651 (proper scope of a lawful nonconforming use in an exhaustible resource is the whole parcel of land owned and intended to be used by the owner at the time the zoning ordinance was promulgated).

no effect on the conclusiveness of an earlier case. Otherwise, no judgment would ever be final." *Ellingson v. Burlington N., Inc.*, 653 F.2d 1327, 1331, 1981-2 Trade Cases P 64,235 (9th Cir. 1981). The trial court properly imposed the collateral estoppel bar.[7]

### Authority to Amend the CUP

¶24 Although we affirm on other grounds, we also address the County's argument that the trial court erred in deciding that the county administrator did not have the authority under GHCC 17.60.160 to allow expansion of the gravel mine to 30.5 acres.

¶25 GHCC 17.60.160 provides:

> The administrator is authorized to approve variations from or amendments to the approved plans which do not result in a change that would substantially affect surrounding properties, the natural environment, or materially change the scope of the project. Any other variations from or amendments to the approved plans shall be applied for, processed and reviewed pursuant to the requirements for initial approval.

¶26 Satsop Valley asserts that expanding the surface excavation project to 30.5 acres may substantially affect the surrounding residential properties and natural environment. The parties do not dispute that the County conducted neither any environmental studies nor held a public hearing to determine the extent of the expansion effects.

¶27 GHCC 17.60.160 authorizes the County Administrator to issue amendments, provided only that such amendments (1) would not substantially affect surrounding properties, (2) would not substantially affect the natural

---

[7] In their opening briefs, the County and Northwest Rock also assigned error to the trial court's assessing all costs of the record against them. Satsop Valley countered that their cost request was premature under RAP 14.1 and 14.4 (appellate court assesses costs after decision terminating review and submission of cost bill). The County conceded its premature request and withdrew it. Moreover, the County and Northwest Rock executed the stipulation and agreed order allocating costs where each party agreed to pay $1,000 to Satsop Valley.

environment, and (3) would not materially change the scope of the project.

¶28 Here, the County Administrator improperly applied GHCC 17.60.160 to Northwest Rock's CUP expansion issue.[8] If Northwest Rock wants to enlarge the permitted scope of the Mouncer Pit, it should submit a permit application and proceed through the required application and review procedures in accordance with GHCC 17.60.120-.140; GHCC 17.80.030-.070.[9] Likewise, the County should be required to follow the same procedure of public notice and a hearing before approving or denying the expansion of gravel mining operations. Thus, the County Administrator improperly made a unilateral decision amending the CUP.

## Attorney Fees

¶29 The County and Northwest Rock seek attorney fees on appeal under RAP 14.2. As they do not prevail, we decline their request.

¶30 Affirmed.

QUINN-BRINTNALL, C.J., and BRIDGEWATER, J., concur.

---

[8] We further note that on October 15, 2000, Mouncer signed a moratorium agreement restricting him from nonforestry-related uses of the land for six years. By amending the CUP and allowing expansion of the gravel mine, the County Administrator allowed Northwest Rock to violate the moratorium terms.

[9] Notably, Mouncer and Northwest Rock completed this process for the 1991 and 1999 expansion proposals.